UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:  }
        }
Cristina L. Morris,  }  Case No. 20-40842-JJR7
        }
    Debtor.  }

OPINION AND ORDER DENYING RELIEF FROM STAY

Bankruptcy Petition and Schedules

On June 5, 2020, Cristina L. Morris ("Morris") filed a petition for relief under chapter 7 of the Bankruptcy Code (11 U.S.C. § 101, et seq. and herein, the "Code"). According to her schedules, statement of financial affairs, and statement of current monthly income, she was unemployed and living separately from her husband who contributed nothing to the income of the household, which included Morris and five children, ages 2 to 16 years. Morris's monthly income was $1,888.46—consisting of food stamps and retirement. The total value of her scheduled assets was $4,019.00, all claimed as exempt. Her assets did not include any real estate or vehicles, and she did not list as assets any internet domain names or websites—mentioned here only because of the issues discussed below. (BK Doc. 1 Sch. A/B.) Her scheduled liabilities—all non-priority unsecured—totaled $33,559.00. (BK Doc. 1 Schs. D and E/F.) Her creditors included three credit card issuers and an individual, Baowei Xia ("Xia") to whom she reported owing $15,000.00 for breach of contract incurred August 15, 2017. (*Id.*)

In her statement of financial affairs (BK Doc. 1 pp. 29-36), Morris reported owning a business entity described as "Savings 101, Inc." located at her home address, and she disclosed being involved in two lawsuits: (1) *Savings 101, Inc. v. Baowei Xia*, for "breach of contract/unjust

enrichment" filed in 2020 and pending in St. Clair County, Alabama Circuit Court and (2) *Baowei Xia v. Cristina Morris*, for "breach of contract" (the "Florida Lawsuit") filed in 2017 and pending in the Circuit Court of Alachua County, Florida (the "Florida Court").

Florida Lawsuit

On February 16, 2017, Xia sued Morris in the Florida Court, demanded a trial by jury, and claimed compensatory damages in an unspecified amount for breach of their partnership agreement, fraud, and breach of fiduciary duty, and asked for an accounting and the imposition of a constructive trust. According to the Second Amended Complaint" (the "Florida Complaint") filed in the Florida Lawsuit, Morris operated a Publix Supermarket sale-coupon matching business through her website, MyPublixCouponing101.com. In September 2014 she invited Xia, a Florida resident, to join her business as an equal partner, which Xia did. Their agreement was oral, and most of their business was conducted in Florida through "Facebook groups" which were the partnership's "most valuable assets." At Morris's request, Xia registered a new website, PublixandBeyond.com, as the partnership's main website, and Morris established a new Facebook group called Publix and Beyond. In August 2016, Morris excluded Xia from the Facebook groups, Publix Couponing 101, and Publix and Beyond, and changed the Facebook groups' names to Publix Savings 101 and Insert Depo. She then redirected the Facebook groups away from the partnership's websites to websites over which she had complete control and refused to share the revenue earned through her websites with Xia.[1]

---

[1] The allegations in this paragraph are a condensed version of those asserted in the Florida Complaint and the court has not made a determination of their accuracy. A copy of the Florida Complaint was attached to Xia's Discharge Complaint that is discussed *infra*.

2

Complaint to Determine Nondischargeability of Debt and Denial of Discharge

As mentioned, Morris filed her bankruptcy case on June 5, 2020, and on August 20th Xia commenced Adversary Proceeding No. 20-40026-JJR (the "Discharge AP") against Morris by filing a Complaint to Determine Dischargeability of Debt and Objection to Discharge (AP Doc. 1; BK Doc. 22; herein "AP Complaint"). Xia claimed he suffered damages caused by Morris's misconduct associated with their defunct partnership and that those damages should not be discharged pursuant to Code § 523(a)(2)(A), (a)(2)(B), (a)(4) and (a)(6), and also claimed Morris's overall chapter 7 discharge should be denied pursuant to Code § 727(a)(2), (a)(3), (a)(4), (a)(5), and (a)(7). The AP Complaint incorporated by reference "[t]he actions and misrepresentations of [Morris] to [Xia] . . . set out in [the Florida Complaint]". A copy of the Florida Complaint was attached as an exhibit to the AP Complaint.[2] The AP Complaint made no material factual averments apart from those incorporated by reference to the Florida Complaint.

Stay Relief Motion

Immediately after filing the AP Complaint, Xia filed a Motion for Relief from Stay (the "Stay Motion," BK Doc. 23) asking the court to terminate the stay imposed by Code § 362(a) and to allow the jury trial of the Florida Lawsuit to proceed to establish the liability owed by Morris to Xia. Following a jury trial in Florida, Xia wants this bankruptcy court to adjudicate the claims in the Discharge AP and determine whether Morris's liability is nondischargeable and whether she

---

[2] Along with the Florida Complaint, copies of some additional pleadings and orders from the Florida Lawsuit were attached to the Discharge Complaint (Bk Doc. 23). At the court's request, copies of additional pleadings and orders in the Florida Lawsuit were submitted by Xia's counsel on October 26, 2020. (BK Doc. 34 Exs. A - R).

should be denied an overall discharge in her case. On October 8, 2020, the court conducted a hearing on the Stay Motion and directed the submission of additional Florida Lawsuit documents.[3]

Code § 362(a)(1) provides that "a petition filed under [the Code]. . . operates as a stay, applicable to all entities, of . . . the . . . continuation . . . of a judicial . . . action . . . against the debtor . . . ." That Code section, without question, stayed any further proceedings in the Florida Lawsuit. However, Code § 362(d)(1) states that on request of a party in interest, the court shall grant relief from the stay "for cause . . . " and § 362(g) places the burden on Morris and the chapter 7 trustee (the "Trustee"), both of whom opposed the Stay Motion, to prove the stay should not be terminated.

Xia's position seemed to be that "cause" for lifting the stay was expediency, given that Morris already lost her appeal in the Florida First District Court of Appeal in which she challenged the jurisdiction of the Florida Court,[4] and the Florida Lawsuit was ready for trial (trial was set for October 5, 2020 before being stayed by Morris's bankruptcy petition).[5] Morris argued she should not be required to incur the expense associated with defending herself in two trials, while the Trustee maintained that he should not be expected to participate in a jury trial at a distant venue, as he must do if the stay were lifted. Implicit in the Trustee's argument is that his statutory duty to take control of property of the bankruptcy estate would be jeopardized by the imposition of a constructive trust, as demanded in the Florida Complaint.[6] Likewise, the imposition of such a trust

---

[3] See note 2, *supra*.

[4] BK Doc. 23, Ex. D.

[5] BK Doc.23, Ex. E.

[6] "The filing of a bankruptcy petition under Chapter 7 creates a bankruptcy 'estate' generally comprising all of the debtor's property. § 541(a)(1). The estate is placed under the

4

by the Florida Court would infringe on this court's exclusive jurisdiction over estate property. 28 U.S.C. § 1334(e).

Analysis

As mentioned, the factual allegations in the Florida Complaint were incorporated by reference, without additions or omissions, into the Discharge Complaint.[7] However, the relief sought by Xia in his two complaints was not the same. The Florida Complaint demands damages, an accounting, and the imposition of a constructive trust, and while relying on the same facts, the Discharge Complaint seeks a declaration that Morris's liability is not dischargeable and also that she should be denied a discharge. It is entirely possible that these same factual allegations may establish Morris's monetary liability in the Florida Lawsuit, but not support nondischargeability or denial of discharge in bankruptcy. If a Florida jury returns a verdict in favor of Xia, this bankruptcy court may never know upon what facts the jury based its verdict—e.g., did the jury find Morris liable based on usurpation of business opportunities, breach of contract, fraud, breach of fiduciary duty, or some combination of those claims? It has been suggested in other cases, though not in this one, that the jury could be instructed to answer interrogatories to explain its underlying factual findings. Such a procedure might work in a simpler case, but in these two proceedings, where the sought-after remedies are based on disparate legal theories, there can be no assurance that the Florida Court will follow such a tedious procedure or that the interrogatories

---

control of a trustee, who is responsible for managing liquidation of the estate's assets and distribution of the proceeds. § 704(a)(1)." *Law v. Siegel*, 571 U.S. 415, 417 (2014).

[7] The Florida Complaint did not specify an amount of damages allegedly suffered by Xia, however, the Discharge Complaint claimed, without further allegations, that the damages exceeded $500,000. The Discharge Complaint also pointed out that Morris scheduled an undisputed $15,000 debt owed to Xia.

5

will sufficiently cover all the elements needed for this bankruptcy court to determine nondischargeability or denial of discharge. The procedure suggested by Xia—a jury trial in Florida to establish liability and damages, along with an accounting and imposition of a constructive trust, followed by a trial in this court on nondischargeability and denial of discharge, with both based on the same facts but different legal concepts and seeking different remedies—would be unnecessarily costly, would duplicate judicial resources, and would contravene the Trustee's and this court's control and jurisdictional mandate over estate property.

The dispute between Xia and Morris involves four basic questions that must be answered: First, what is the amount of Morris's liability to Xia, if any, in addition to the $15,000 she admitted in her schedules? Second, how much of that $15,000, plus any additional amount, is nondischargeable? Third, does the composition of remaining partnership assets include estate property? And fourth, should Morris's overall discharge as to all creditors be denied? A jury trial of the Florida Lawsuit can answer the first question, but practically speaking, not the other three.[8]

This bankruptcy court can answer all four, including the amount of Morris' liability, if any, and this court may enter a money judgment if her liability is determined to be nondischargeable.[9] Claims for nondischargeability under Code § 523(a) and denial of discharge under § 727 are core proceedings in which only this court may enter final orders under 28 U.S.C. § 157(b)(1) and (b)(2)(I) and (J), and both require adjudication via bankruptcy adversary proceedings under Rule

---

[8] It is conceivable that a jury could decide how partnership property should be divided, but that would require this bankruptcy court to surrender its exclusive jurisdiction over estate property, something that arguably it cannot do, and in any event should not even consider doing, without very good cause.

[9] *See, e.g., Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864 (9th Cir. 2005); *and see Heckert v. Dotson (In re Heckert)*, 272 F.3d 253 (4th Cir. 2001) (discussing ability of bankruptcy courts to enter money judgments).

Case 20-40842-JJR7    Doc 35    Filed 11/13/20    Entered 11/13/20 16:04:25    Desc Main
Document      Page 6 of 8

7001(4) and (6) of the Fed. R. Bankr. P.  In fact, § 523(c)(1) provides that "the debtor shall be discharged from a debt of a kind specified in paragraphs (2), (4), or (6) [the paragraphs on which the Discharge Complaint is based] of subsection (a) . . . unless . . . the *court* determines such debt to be excepted from discharge . . . ." (emphasis added).   The "court" referred to in § 523(c)(1) is the bankruptcy court, which has exclusive jurisdiction to make the determination of dischargeability under Code § 523(a)(2), (a)(4), and (a)(6). *See In re Morrow*, 613 B.R. 786, 794 (Bankr. N.D. Okla. 2020). And the bankruptcy court is the only court that can decide the issue of whether to grant or deny the Debtor her discharge under Code § 727.

As mentioned above, the Florida Complaint demanded an accounting with respect to the "winding-up of the partnership business and [Morris's] use of the partnership property and usurpation of the partnership opportunity . . . ." and demanded the imposition of "a constructive trust for the benefit of [Xia] over half of all assets obtained by [Morris] in the conduct and/or winding up of the partnership business and/or from the appropriation of partnership opportunity. . . ." Section 1334(e)(1) of title 28 U.S.C. provides that the district court (and by referral, this bankruptcy court under § 157(a)) has "exclusive jurisdiction . . . of all the property, wherever located, of the debtor as of the commencement of [the bankruptcy] case, and of property of the estate."  Property of the estate as described in Code § 541(a) would include Morris's interest in the parties' partnership and its revenue, and her distributive share from the dissolution and winding down of their partnership.  Property of the estate must be turned over to the Trustee and debts owing to the estate must be paid to the Trustee, and he is required to "collect and reduce to money the property of the estate . . . ." Code §704(a)(1); *see also* § 542.

Stay relief would pave the way for the Florida Court to adjudicate Xia's demand for an accounting and imposition of a constructive trust, which would be tantamount to a division of

partnership assets, revenue, and income between Xia and Morris—or more accurately, between Xia and the bankruptcy estate controlled by the Trustee. With respect to Morris's share of the partnership assets and income, the Trustee is now the real party in interest, and as such would be an indispensable party in the Florida Lawsuit. The Florida Court does not have jurisdiction over estate property or the Trustee who now controls the same. A state court simply does not have jurisdiction under 28 U.S.C. § 1334(e) to divvy up assets that include estate property.

Accordingly, for the reasons stated above, the court finds that there is no cause to lift the stay and thus Xia's Motion for Relief from Stay (BK Doc. 23) is DENIED.

So ORDERED this 13th day of November 2020.

/s/ James J. Robinson
JAMES J. ROBINSON
CHIEF U.S. BANKRUPTCY JUDGE